AUDIE E. TREXLER, Plaintiff v. NORFOLK SOUTHERN RAILWAY COMPANY, a corporation; THOMAS L. LYNCH; JAMES H. FORREST; C.L. CRABTREE; and NORFOLK SOUTHERN CORPORATION, a corporation, Defendants

No. COA00-346

(Filed 7 August 2001)

**Employer and Employee— wrongful discharge claim—collective bargaining contract**

The trial court did not err by granting summary judgment for defendants on a wrongful discharge claim by a railroad employee subject to a collective bargaining agreement which provided that he could not be removed or disciplined except for just and sufficient cause after a preliminary hearing. The proper claim for this plaintiff was breach of contract.

On writ of certiorari to review order entered 16 March 1999 by Judge Michael E. Beale in Rowan County Superior Court. Heard in the Court of Appeals 24 January 2001.

*Wallace & Graham, by Richard Huffman, and C. Marshall Friedman, P.C., by Kenneth E. Rudd, for plaintiff-appellant.*

*Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by Allison M. Grimm, and Gibbes & Burton, L.L.C., by Frank H. Gibbes, III, for defendant-appellees.*

JOHN, Judge.

Plaintiff Audie E. Trexler seeks review of the trial court's entry of summary judgment in favor of defendants Norfolk Southern Railway Company, Thomas L. Lynch, James H. Forrest, C.L. Crabtree and Norfolk Southern Corporation (collectively defendants). We affirm the trial court.

The record reflects the following generally uncontroverted factual and procedural backgroung information: Plaintiff was hired by defendant Norfolk Southern Railway Company (NSRC) on or about 12 November 1979 and worked at NSRC's Linwood, North Carolina facility. As a Carman for NSRC, plaintiff was represented by his labor organization, the Transportation Communications International Union, Brotherhood of Railway Carmen Division (the Union). Plaintiff was also subject to the terms of a Collective Bargaining Agreement (the Agreement) between NSRC and the Union. Rule 34(a) of the Agreement specified as follows:

[a]n employee will not be removed from service or disciplined (including discharge) except for just and sufficient cause after a preliminary hearing.

On or about 5 December 1995, plaintiff testified under oath in a case brought by the Union and a co-worker against defendants Norfolk Southern Corporation (NSC) and NSRC in United States District Court for the Eastern District of Tennessee, Knoxville Division. In his sworn statement, plaintiff related he had heard defendant Thomas L. Lynch (Lynch), a NSRC Master Mechanic, state to employees of NSRC that he "did not recommend that we vote Jack [Wright] in as local chairman because . . . Jack always stirred up problems" and that "we did not need Jack in there, because he would cause problems." At the time, Wright was a candidate for election as local chairperson of the Union.

Shortly thereafter, Timothy T. Malloy, Assistant Director of Labor Relations for NSRC, contacted Lynch and inquired if Lynch had indeed made such a statement. Lynch denied having done so.

Defendant J.H. Forrest (Forrest), Senior General Foreman at NSRC's Linwood facility and plaintiff's supervisor, reviewed a copy of plaintiff's sworn testimony at the request of Lynch. According to Forrest, he subsequently interviewed employees and supervisors "who could have been in the meeting or gathering where [plaintiff]

alleged [Lynch] made the statement in question," but each of the "individuals [interviewed] indicated they had not heard any supervisors at Linwood tell anyone not to vote for Jack Wright."

Pursuant to Rule 34 of the Agreement and on behalf of NSRC, Forrest wrote plaintiff a letter dated 4 January 1996. Plaintiff was directed therein to report "for a formal investigation to determine [plaintiff's] responsibility for conduct unbecoming an employee" in connection with plaintiff's sworn statement regarding Lynch. Defendant C.L. Crabtree (Crabtree), a NSRC official, presided over the 23 January 1996 investigation. Plaintiff, accompanied by his duly authorized Union representatives, presented testimony from five witnesses and documented polygraph test results.

By letter dated 31 January 1996, Crabtree returned the documentation to plaintiff, indicating the polygraph results had been deleted from the record and would not be considered because such evidence was prohibited under the provisions of "the federal Employee Polygraph Protection Act, 29 U.S.C., Section 2001, *et seq.*" By separate letter the same date, Crabtree also informed plaintiff the 'evidence presented at the investigation "clearly reflect[ed] that [plaintiff was] guilty of the charge brought against [him,]" and that plaintiff was "dismiss[ed] from all services" of NSRC. Pursuant to the Agreement, plaintiff subsequently appealed to a Public Law Board which upheld his termination.

Seeking compensatory and punitive damages, plaintiff instituted the instant action 31 January 1996, alleging claims of wrongful discharge in violation of public policy, defamation, negligent and intentional infliction of emotional distress, tortious interference with an employment contract and civil conspiracy. The case initially was removed to federal court and then remanded to Rowan County Superior Court. *See Trexler v. Norfolk Southern Ry. Co.*, 957 F. Supp. 772 (M.D.N.C. 1997). Defendants' subsequent motion for summary judgment was granted 16 March 1999 and all claims were dismissed with prejudice.

Plaintiff's appeal was dismissed by the trial court 11 October 1999 for failure to comply with the N.C. Rules of Appellate Procedure. On 3 December 1999, plaintiff filed a "Petition for Writ of Certiorari" (Petition) with this Court, which Petition was conditionally allowed and referred to this panel. We elect to entertain plaintiff's appeal. *See* N.C.R. App. P. 21.

**TREXLER v. NORFOLK S. RY. CO.**

[145 N.C. App. 466 (2001)]

Although plaintiff originally assigned error to dismissal of each of his six claims, his Petition sought review solely of the claim for wrongful discharge and only that cause of action has been addressed by plaintiff in his appellate brief. Plaintiff's remaining assignments of error are thus deemed abandoned and we do not address them. *See* N.C.R. App. P. 28(b)(5) (assignments of error "in support of which no . . . argument is stated . . . will be taken as abandoned").

In short, plaintiff maintains on appeal that the trial court erred in granting defendants' summary judgment motion regarding plaintiff's claim for wrongful discharge. We do not agree.

Summary judgment is properly granted when

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.

N.C.G.S. § 1A-1, Rule 56 (1999). A summary judgment movant bears the burden of establishing the lack of any triable factual issue. *Roumillat v. Simplistic Enterprises, Inc.*, 331 N.C. 57, 62-63, 414 S.E.2d 339, 341-42 (1992). The movant may meet its burden by: (1) demonstrating that an essential element of the plaintiff's claim is nonexistent; (2) establishing through discovery that the plaintiff's cannot produce evidence to support an essential element of the claim; or (3) showing that plaintiff cannot survive an affirmative defense, such as governmental immunity. *Bernick v. Jurden*, 306 N.C. 435, 440-41, 293 S.E.2d 405, 409 (1982).

Plaintiff asserts he was entitled to sue in tort for wrongful discharge in violation of public policy "even though he was employed pursuant to a collective bargaining agreement." Previous decisions of our appellate courts indicate plaintiff's argument must fail.

North Carolina's first appellate decision adopting the tort of wrongful discharge in violation of public policy was *Sides v. Duke Univ.*, 74 N.C. App. 331, 328 *disc. review denied*, 314 N.C. 331, 333 S.E.2d 490 (1985). The plaintiff nurse in *Sides* alleged her at will employment with the defendant had been terminated in retaliation for her refusal to commit perjury in a medical malpractice action against her employer. In upholding the plaintiff's claim, this Court reasoned that:

TREXLER v. NORFOLK S. RY. CO.

[145 N.C. App. 466 (2001)]

while there may be a right to terminate a contract at will for no reason, or for an arbitrary or irrational reason, there can be no right to terminate such a contract for an unlawful reason or purpose that contravenes public policy. . . . We hold, therefore, that no employer in this State, notwithstanding that an employment is at will, has the right to discharge an employee and deprive him of his livelihood without civil liability because he refuses to testify untruthfully or incompletely in a court case as plaintiff alleges happened here.

*Id.* at 342, 328 S.E.2d at 826.

Our Supreme Court subsequently adopted a public-policy exception to employment at will in *Coman v. Thomas Manufacturing Co.*, 325 N.C. 172, 175, 381 S.E.2d 445, 447 (1989) (employer's alleged discharge of plaintiff for refusal to violate U.S. Department of Transportation regulations by driving excessive hours and falsifying records "offend[s] the public policy of North Carolina"). Three years later, *in Amos v. Oakdale Knitting Co.*, 331 N.C. 348, 416 S.E.2d 166 (1992), the Court considered a claim that three employees had been ordered to work for reduced pay, below the statutorily prescribed minimum wage, or suffer termination of their employment. *Id.* at 350, 452 S.E.2d at 168. In rejecting the defendants' assertion that they had not violated public policy because the "alleged acts [we]re peculiar to the plaintiff[s]," *id.* at 352, 416 S.E.2d at 169, the Court observed that:

[a]lthough the definition of "public policy" approved by this Court does not include a laundry list of what is or is not "injurious to the public or against the public good," at the very least public policy is violated when an employee is fired in contravention of express policy declarations contained in the North Carolina General Statutes.

*Id.* at 353, 452 S.E. 2d at 169 (footnote omitted).

Plaintiff relies heavily upon the foregoing cases. Unlike plaintiff, however, we do not read these decisions to entitle all terminated employees to assert the tort of wrongful discharge. Rather, in each of the cited instances the tort was recognized solely in the context of employment at will. *See id,* 331 N.C. at 350, 416 S.E.2d at 167 (1992) (noting *Coman* explicitly adopted a public policy exception to the well-entrenched employment at will doctrine), and *Williams v. Hillhaven Corp.*, 91 N.C. App. 35, 39, 370 S.E.2d 423, 425 (1988)

(observing *Sides* created "an exception to the general rule that an employee at will has no tort claim for retaliatory discharge").

In addition, this Court has expressly stated that:

> [w]rongful termination may be asserted "only in the context of employees at will," *and not by an employee* "employed for a definite term or . . . *subject to discharge only for 'just cause.'* "

*Houpe v. City of Statesville*, 128 N.C. App. 334, 343, 497 S.E.2d 82, 88, (citations omitted) (emphasis added), *disc. review denied*, 348 N.C. 72, 505 S.E.2d 871 (1998).

Further, in rejecting a schoolteacher's claim she had been wrongfully "constructively discharged by Defendants in violation of public policy," this Court reasoned as follows:

> Breach of contract is the proper claim for a wrongfully discharged employee who is employed for a definite term *or an employee subject to discharge only for "just cause."* Plaintiff is not an employee at will because she had attained the status of a career teacher under § N.C. Gen. Stat. 115C-325(c) and could not be dismissed or demoted *except for reasons specified in Section 115C-325(e)(1).*

*Wagoner v. Elkin City Schools' BD. of Education*, 113 N.C. App. 579, 588-89, 440 S.E.2d 119, 125, (citations omitted) (emphasis added), *disc. review denied*, 336 N.C. 615, 447 S.E.2d. 414 (1994).

Finally, in *Claggett v. Wake Forest University*, 126 N.C. App. 602, 486 S.E.2d 443 (1997), this Court affirmed the trial court's dismissal of a university professor's tort claim for wrongful discharge, reiterating that

> [b]reach of contract is the remedy for a wrongfully discharged employee who is employed for a definite term or who is subject to discharge only for just cause. Plaintiff alleges that he was employed pursuant to teaching appointments of definite duration; he was not, therefore, an at-will employee.

*Id.* at 611, 486 S.E.2d at 448.

In the case *sub judice*, the Agreement explicitly provided that plaintiff might not be "removed from service or disciplined (including discharge) except for just and sufficient cause after a preliminary hearing." As with the plaintiffs in *Wagoner* and *Claggett*, therefore, "breach of contract [w]as the proper claim, *Wagoner*, 113 N.C. App. at

588, 440 S.E.2d at 125, by which plaintiff herein might have challenged termination of his employment in that he was "an employee subject to discharge only for "just cause," *id.* Accordingly, an essential element of plaintiff's wrongful discharge claim was "nonexistent," *Roumillat*, 331 N.C. at 63, 414 S.E.2d at 342, and the trial court did not err in granting summary judgment in favor of defendants regarding that claim. In light of this holding, we further hold the trial court properly allowed summary judgment as to plaintiff's claim for punitive damages. *See Jones v. Gwynne*, 312 N.C. 393, 405, 323 S.E.2d 9, 16 (1984) (before punitive damages may be awarded, "jury must find that the defendant committed an actionable legal wrong against the plaintiff").

Affirmed.

Judges WYNN and McGEE concur.